UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANORUS L. MCCREA,

        Plaintiff,

v.                            Case No. 8:21-cv-2160-VMC-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, it is recommended that the Commissioner's decision be reversed and remanded.

**I.**

### A.    Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 327–33). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 96–97, 146–47). Plaintiff then requested an

---

[1]  Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

administrative hearing (Tr. 183–84). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 35–61). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 8–29). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1978, claimed disability beginning April 15, 2018 (Tr. 327). Plaintiff obtained a 10th grade education (Tr. 369). Plaintiff's past relevant work experience included work as a fast-food cook and a construction worker (Tr. 56). Plaintiff alleged disability due to a broken hand, leg pain, back pain, knee pain, acid reflux, abdominal hernia, bleeding ulcers, depression, and anxiety (Tr. 101, 124).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2021 and had not engaged in substantial gainful activity since April 15, 2018, the alleged onset date (Tr. 13). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, arthritis, gastroesophageal reflux disease, insomnia, upper extremity fractures, depression, and anxiety (Tr. 13–14). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant can lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 4 hours per day; sit up to 6 hours per day; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; frequently balance; occasionally reach overhead, but frequently reach in other directions, handle, finger, and feel; must avoid vibration, hazardous machinery and heights; can perform unskilled work with an SVP of one or 2 and a GED reasoning level of one or 2; cannot perform fast-paced production or fast-paced quota work, such as assembly lines; can have occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for 2 hours, but does require the standard morning, lunch, and afternoon breaks.

(Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 19). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a trimmer, inspector, or sorter (Tr. 20). Accordingly, based on

Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether

4

the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred first by failing to properly evaluate the medical opinion of Blaine Winchester, ARNP, and Dr. Gregory Onderko. Second, Plaintiff argues the ALJ failed to correctly assess Plaintiff's mental impairments. For the following reasons, the undersigned recommends that the Commissioner's decision be reversed and remanded.

### A. Evaluation of Medical Opinions

Because Plaintiff applied for DIB and SSI on December 14, 2018 (Tr. 327–33) the new SSA regulations apply to how the ALJ considers medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also Simon v. Comm'r of Soc. Sec.*, No. 19-14682, 2021 WL 3556433, at *7 n.4 (11th Cir. Aug. 12, 2021) (indicating that 20 C.F.R. § 404.1527 only applies to disability claims filed before March 27, 2017, and claims filed after that date are governed by 20 C.F.R. § 404.1520c, which prescribes a somewhat different framework for evaluating medical opinions). Namely, under 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. §§ 404.1520c(c)(1)–(4), 416.920c(c)(1)–

(4). Medical evidence that does not rise to an opinion under the regulations is treated differently. This category of evidence includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513 (a)(3), 416.913. The ALJ must consider other medical evidence but need not articulate her findings regarding its persuasiveness. *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022).

The new SSA regulations also altered the parameters of what qualifies as a medical opinion. The new SSA regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The previous definition of medical opinion was broader. The prior regulations provided that medical opinions were

statements from acceptable medical sources that reflect judgments not only about what the claimant can still do despite their impairment and the claimant's physical or mental restrictions, but also the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis. 20 C.F.R. §§ 404.1527(a), 416.927(a). The Eleventh Circuit has yet to provide guidance on what qualifies as a medical opinion under the amended definition of medical opinions but as one district court decision explained, examples of medical opinions include "statements from a physician that a claimant can never lift more than twenty pounds, cannot understand and follow complex instructions, cannot tolerate anything more than occasional interaction with the public, or any other comments about the extent to which a claimant can or cannot perform a work-related function." *Dye*, 2022 WL 970186, at *4. Decisions from district courts within the Eleventh Circuit have generally held that medical findings or treatments, such as test results, prescriptions, or surgery recommendations, are not medical opinions. *See Maguire v. Saul*, No. 8:20-cv-710-T-TGW, 2021 WL 2284463, at *4 (M.D. Fla. June 4, 2021) (reasoning that medical findings are not medical opinions because they do not necessarily provide perspectives about claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *5 (M.D. Fla. June 25, 2021) (holding the ALJ did not err by failing to weigh opinions where a claimant pointed to nothing in the medical evidence besides medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis, "none of which constitute 'medical opinions'"); *Lucas v. Comm'r of Soc.*

*Sec.*, No. 6:21-CV-1836 DAB, 2022 WL 2901219, at *4 (M.D. Fla. July 22, 2022) (reasoning the ALJ was not required to evaluate an ARNP's description of claimant's level of pain as "10/10" because it was not a medical opinion); *Alisa M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-559-CCB, 2022 WL 16752091, at *9 (N.D. Ga. Sept. 30, 2022) (holding doctors' recommendation that claimant have surgery was not a medical opinion). Decisions from this district have also held that general statements assessing that a claimant cannot work do not qualify as medical opinions. *See Matthews v. Comm'r of Soc. Sec.*, No. 8:22-CV-679-JSS, 2022 WL 17844054, at *10 (M.D. Fla. Dec. 22, 2022) (reasoning that because doctors' statements that claimant's depression and anxiety impacted her ability to work did not "specifically explain how Plaintiff's depression and anxiety impacted her ability to work and what Plaintiff could still do despite these impairments," the statements were not medical opinions); *Smith v. Comm'r of Soc. Sec.*, No. 5:21-CV-551-PRL, 2022 WL 17076709, at *4 (M.D. Fla. Nov. 18, 2022) (holding statements were not medical opinions where doctors "checked the box indicating that Plaintiff's narcolepsy impacted his ability to work" because the statements did not "specifically explain how narcolepsy impacted Plaintiff's ability to work and what Plaintiff could still do despite his narcolepsy").

Here, Plaintiff argues that the ALJ erred by failing to properly evaluate the opinions of Blaine Winchester, ARNP, and Dr. Gregory Onderko under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c (Doc. 16, at 6–7). On May 6, 2019, ARNP Winchester completed a Psychiatric Impairment Questionnaire that was reviewed

and endorsed by Dr. Onderko (Tr. 805–807). In it, ARNP Winchester notes that she had two contacts with Plaintiff: on March 7, 2019 she saw Plaintiff and conducted a psychiatric evaluation and on April 11, 2019 she saw Plaintiff for medication management (Tr. 805). ARNP Winchester's diagnosis was of generalized anxiety disorder and major depressive disorder, recurrent (Tr. 805). These manifested in appetite disturbance with weight change, sleep disturbance, mood disturbance, recurrent panic attacks, feelings of guilt/worthlessness, social withdrawal or isolation, decreased energy, persistent irrational fears, and generalized persistent anxiety (Tr. 805). ARNP Winchester noted that Plaintiff appeared to have good hygiene and grooming, was cooperative, maintained eye contact, was engaged in conversation, and had "no apparent issues with concentration or attention" (Tr. 805). ARNP Winchester noted that Plaintiff reported daily worry, muscle tension, sleep disturbances, difficulty in maintaining relationships, and decreased appetite (Tr. 805). Furthermore, Plaintiff reported spikes in anxiety "where he feels as though he can't breathe, has dizziness, and increased sweating" (Tr. 805). When asked on the form about Plaintiff's potential absenteeism, ARNP Winchester checked the box indicating that she anticipated that Plaintiff's impairments or treatment would cause the patient to be absent from work "more than twice a month" (Tr. 806). ARNP Winchester concluded that Plaintiff had marked limitations in restriction of activities of daily living and in difficulties in maintaining social functioning (Tr. 807). However, ARNP Winchester concluded that there was insufficient evidence with respect to

deficiencies of concentration, persistence or pace and episodes of deterioration or decompensation (Tr. 807).

    The ALJ cited to ARNP Winchester's report only once in his entire decision: In considering Plaintiff's limitations with respect to understanding, remembering or applying information, the ALJ cited ARNP Winchester's report to show that Plaintiff has had no memory loss (Tr. 14, 805). The ALJ offered no analysis of the opinion, nor did he supply an assessment of the persuasiveness of ARNP Winchester's statements. Similarly, in the portion in which the ALJ assessed medical opinions, the ALJ does not assess any statements in ARNP Winchester's Psychiatric Impairment Questionnaire (Tr. 18–19). Plaintiff asserts that the ALJ's failure to evaluate ARNP Winchester's statements is reversible error. The Commissioner does not take up the issue of harmless error, instead asserting that ARNP Winchester's statements were not a medical opinion and therefore did not require evaluation under the factors listed in 20 C.F.R. § 404.1520c (Doc. 16, at 10). According to the Commissioner, the statements do not "provide perspectives about the claimant's functional abilities and limitations" because the statements merely provide a "diagnosis and prognosis" (Doc. 16, at 10–11). Thus, the Commissioner argues, because the opinions are not medical opinions under the regulations, the ALJ was not required to discuss the opinions and remand is not warranted so long as the ALJ's decision is otherwise supported by substantial evidence (Doc. 16, at 13).

The undersigned finds that ARNP Winchester's statements in the Psychiatric Impairment Questionnaire are properly classified as medical opinions and thus the ALJ should have evaluated the opinions according to the factors listed in 20 C.F.R. §§ 404.1520c and 416.920c. To reiterate, a medical opinion is "a statement from a medical source about what [Plaintiff] can still do despite [Plaintiff's] impairment(s)" and "whether [Plaintiff has] one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Here, ARNP Winchester opined that she anticipates "more than twice a month," the patient's impairments or treatment would cause the patient to be absent from work (Tr. 806). That Plaintiff would miss work more than twice a month is clearly an impairment-related limitation or restriction because an assessment of absenteeism describes the extent to which Plaintiff can perform a work-related function: attendance. *See also Dye*, 2022 WL 970186, at *4 ("[C]omments about the extent to which a claimant can or cannot perform a work-related function are examples of 'medical opinions' for purposes of a Social Security disability analysis.").[2] Additionally, by its nature, an assessment that Plaintiff would be absent from work "more than twice a month" necessarily implies that Plaintiff can attend work the other days of the month; that is, it is "a statement from a medical source about what [Plaintiff] can still do despite

---

[2] The undersigned acknowledges a Middle District of Florida opinion which holds that a medical practitioner's assessment about potential absenteeism is not a medical opinion, but merely "other medical evidence." *Thomas v. Comm'r of Soc. Sec.*, No. 8:20-CV-1714-VMC-NPM, 2022 WL 4134772 (M.D. Fla. Aug. 4, 2022), *report and recommendation adopted*, No. 8:20-CV-1714-VMC-NPM, 2022 WL 4133194 (M.D. Fla. Sept. 12, 2022). However, the undersigned finds the opinion unpersuasive as it fails to explain why the statement did not qualify as a medical opinion and cites no explanatory authority to that effect.

[Plaintiff's] impairment(s)." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). It is undisputed that the ALJ did not assess ARNP Winchester's opinion according to the factors listed in 20 C.F.R. §§ 404.1520c and 416.920c. Therefore, the ALJ erred.

The Commissioner expressly refuses to discuss the possibility of harmless error (Doc. 16, at 10 ("[T]he Commissioner makes no harmless error argument as it is her contention that there was no error.")). While the Commissioner forfeits this argument, it is worth noting the ALJ's failure to discuss ARNP Winchester's medical opinion is not harmless. The persuasiveness of ARNP Winchester's opinion regarding Plaintiff's absenteeism was integral to the ALJ's formation of Plaintiff's RFC and thus the ALJ's ultimate decision. The ALJ asked the VE whether the jobs the VE cited as examples could be performed by a hypothetical individual who "will miss work at least two days per month" (Tr. 58). The VE responded, "No, Your Honor. In my opinion that would exceed customary employer tolerance for absenteeism in a competitive work environment[.] …. In my opinion most employers will tolerate a maximum of one absence per month on a regular ongoing basis to maintain a competitive job" (Tr. 59). The resulting RFC did not include a limitation that would reflect limitations associated with absenteeism (Tr. 15). Thus, the ALJ's assessment of this medical opinion clearly affected the ALJ's ultimate determination. As such, the undersigned "cannot say that the failure to address [ARNP Winchester's opinion] was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006); *see also,*

*e.g., Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) ("Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [the claimant's] RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless."). Therefore, the undersigned recommends remanding this case for findings regarding the medical opinion of ARNP Winchester in accordance with the regulations.[3]

### B. Assessment of Mental Impairments

While remand is warranted on Plaintiff's first issue, the undersigned will also consider Plaintiff's second argument. Plaintiff argues that the ALJ erred in the use of the special technique for evaluation of mental impairments by failing to correctly assess Plaintiff's mental impairments at step 3 of the sequential evaluation.[4] For the foregoing reasons, the undersigned recommends finding the ALJ committed harmless error in his evaluation of Plaintiff's mental impairments.

At step 3 of the sequential evaluation, the claimant has the burden of proving that his impairment meets or equals a listed impairment. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir.1991). Section 12.00 of the Listings appendix within the SSA regulations contains the Listings for mental disorders, including, as applicable here, Listings 12.04 and 12.06, the Listings associated with anxiety and depression. *See*

---

[3] ARNP Winchester also evaluated Plaintiff's degree of limitation in four different categories of functional limitations and concluded that Plaintiff has a "marked" limitation in restriction of activities of daily living and in difficulties in maintaining social functioning (Tr. 807). The ALJ should also evaluate the persuasiveness of these opinions upon remand.
[4] Plaintiff limits his argument to the ALJ's assessment of whether Plaintiff's mental impairments met or equaled a listing (Doc. 16, at 16). Plaintiff makes no argument regarding the formation of the RFC at step 3 in the sequential evaluation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2. As part of evaluating whether a claimant meets Listings 12.04 and 12.06, among other things, the ALJ evaluates how a claimant's mental impairments impact four broad functional areas, (the "paragraph B criteria"): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in considering the functional areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2. When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding as to the degree of limitation for each of the functional areas. *Moore*, 405 F.3d at 1213–14; 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ found the severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04 and 12.06 for failure to meet the paragraph B criteria. Plaintiff alleges two of the four findings the ALJ made with regard to the paragraph B criteria are not supported by substantial evidence; namely, understanding, remembering, or

applying information and concentrating, persisting, or maintaining pace. The undersigned will consider each challenged criteria in turn.

First, Plaintiff argues the ALJ's analysis is deficient with respect to his conclusion that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. In support of his finding, the ALJ cited that Plaintiff was able to count change but struggled to watch television and reported having a very short attention span (Tr. 15, 380–82). The ALJ also cites Plaintiff's inability to focus, bad anxiety, and lack of sleep (Tr. 15, 383). The ALJ's decision is also supported by the findings of psychologist Dallas Carey, Psy.D., who noted Plaintiff's thought processes were coherent and goal directed (Tr. 708). The report showed Plaintiff was unable to complete serial 7's from 100 and struggled with simple math calculations (Tr. 70). Dr. Carey thus concluded that Plaintiff had a moderate limitation in his ability to sustain concentration and perform a task at a consistent pace (Tr. 709). The ALJ's decision is further supported by two state agency opinions indicating Plaintiff is moderately limited in his ability carry out detailed instructions and maintain concentration for extended periods but not significantly limited in other areas of concentration or persistence (Tr. 74; 91–92; 119; 142). Finally, the ALJ stated that these opinions were consistent with the paragraph B findings (Tr. 18). Plaintiff argues that the ALJ failed to "explain how such severe limitations resulted in only moderate limitations" (Doc. 16, at 16). In so arguing, Plaintiff asks the Court to reweigh the evidence. As already discussed, the scope of review is limited to determining whether the findings of the Commissioner are supported by

substantial evidence and whether the correct legal standards were applied. *Wilson*, 284 F.3d at 1221. The court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted). The undersigned concludes that substantial evidence supports the ALJ's finding that Plaintiff is moderately impaired in concentrating, persisting, and maintaining pace and in reaching that conclusion, the ALJ applied the correct legal standards.

Second, the ALJ found that in understanding, remembering or applying information, Plaintiff has a moderate limitation. The ALJ, citing Exhibit 3E, reasoned that the Plaintiff knew how to pay bills, handle a savings account, and use a checkbook (Tr. 14). The ALJ also found it persuasive that reports show Plaintiff has had no memory loss (Tr. 14). The ALJ did note, however, that Plaintiff needed to be reminded to go places (Tr. 14). As part of the ALJ's analysis of Plaintiff's limitations understanding, remembering, and using information the ALJ misstated Plaintiff's ability to understand savings and checking accounts. The Commissioner concedes that "the ALJ mistakenly indicated that [Plaintiff] had reported he could handle a savings account and a checkbook when he actually stated that he did not understand those things" (Doc. 16, at 19). Instead, the Commissioner argues that this mistake does not negate the ALJ's entire finding as to Plaintiff's ability to understand, remember, and apply information as moderately limited (Doc. 16, at 19). Meanwhile, according to Plaintiff, this misstatement renders the determination not supported by substantial evidence because "it is unconscionable to speculate

that a true understanding of the facts would produce the same determination" (Doc. 16, at 15).

The Eleventh Circuit has held that an ALJ's misstatement of fact is harmless error if it does not affect the ALJ's conclusion. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). However, "[c]ourts in this district have found that if the ALJ makes a misstatement of fact that is material or integral to the ALJ's ultimate decision, then the misstatement is not harmless and remand may be warranted." *Baxter v. Comm'r of Soc. Sec.*, No. 6:18-cv-1118-Orl-DCI, 2019 WL 4140939, at *2 (M.D. Fla. Aug. 30, 2019) (collecting cases). Where the misstatement substantially affects the ALJ's conclusion, the misstatement is material. *See, e.g., Dolan v. Comm'r of Soc. Sec.*, No. 6:16-cv-2143-Orl-41GJK, 2017 WL 8809481, at *3 (M.D. Fla. Oct. 23, 2017) (where ALJ relied on misstatement to find claimant's statements regarding effects of his impairments not credible, ALJ's misstatements substantially affected his decision and were therefore material, and not harmless error), *report and recommendation adopted*, 2018 WL 1531917 (M.D. Fla. Mar. 29, 2018).

It is not clear the extent to which the ALJ's misstatement of the record affected his determination of Plaintiff's limitations in understanding, remembering or applying information. Indeed, it seems likely the misstatement substantially affected the ALJ's ultimate conclusion given that the ALJ's *only* other cited source of factual evidence in support of this specific determination are reports that show Plaintiff has a lack of memory loss (Tr. 14, 805). But even if the ALJ erred in determining the extent of Plaintiff's limitations in understanding, remembering, or

applying information, any error was harmless because Plaintiff would have had to meet two of the four criteria in paragraph B. *See Himes v. Commissioner of Social Sec.*, 585 Fed.Appx. 758 (2014) (reasoning that the ALJ's purported error would be harmless because plaintiff would have had to meet two of the four criteria in paragraph B, and, substantial evidence supports the ALJ's other findings); *Bellew v. Acting Com'r of Social Sec.*, 605 Fed.Appx. 917 (2015) (same). As already discussed, substantial evidence supports the ALJ's finding that Plaintiff has moderate limitations in in concentrating, persisting, and maintaining pace. Additionally, Plaintiff does not challenge the remaining two paragraph B criteria. Thus, because substantial evidence supports the ALJ's findings in the other three paragraph B criteria, any error as to the ALJ's analysis of Plaintiff's paragraph B criteria is harmless.

## IV.

While the undersigned finds remand is unwarranted as to the ALJ's error in evaluating Plaintiff's paragraph B criteria, the ALJ's consideration of ARNP Winchester's medical opinion is not harmless. Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.  The decision of the Commissioner be REVERSED and the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with the foregoing.

2.  The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 24th day of February, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**


cc:    Hon. Virginia M. Hernandez Covington
       Counsel of Record